IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DEBRA JEAN ZENNER,

      Plaintiff,

v.                                                       Case No. 6:18-CV-01191-JTM

ANDREW M. SAUL,[1]
*Commissioner of Social Security*,

      Defendant.

MEMORANDUM AND ORDER

Plaintiff Debra Jean Zenner filed an application for Title II disability and disability insurance benefits on January 13, 2014, claiming a disability beginning on October 15, 2012. The claim was initially denied by the Social Security Administration and was denied again upon reconsideration. Zenner than requested and received a hearing in front of Administrative Law Judge (ALJ) David Page. The hearing was held on February 25, 2016 in Wichita, Kansas. Additional written evidence was submitted both before and after the hearing. ALJ Page issued an unfavorable written decision on May 24, 2017, finding that although Zenner suffered from multiple severe impairments, she was not disabled within the relevant Social Security framework because she retained the residual functional capacity to engage in certain light, unskilled occupations prevalent in the national economy. Zenner filed a timely appeal with the Appeals Council, which found no basis for granting Zenner's request for review. Zenner now appeals to this court,

---

[1] Andrew M. Saul is substituted for former Acting Commissioner of Social Security Nancy A. Berryhill pursuant to Fed.R.Civ.P. 25(d).

arguing that the ALJ failed to give the opinion of Zenner's treating physician appropriate weight.

**History of the Case**

Zenner has a master's degree in special education and worked as a teacher's aide, teacher, and special education teacher from 2001 – 2012. (Tr. 75, 251). She testified that she had been seeing Dr. Barclay, her family doctor, for 20 years. (Tr. 41). In late August 2010, Zenner was hospitalized with pneumonia. (Tr. 1F, 2F). On October 15, 2010, Zenner reported to Dr. Barclay's office for re-check of pneumonia and fatigue; she reported feeling generally unwell, having no energy and no ability to return to work. (Tr. 4F). Notes from office visits on October 18, October 20, and October 25 indicate fatigue, polymyalgia, polyarthralgia and body aches. (Tr. 4F). Dr. Barclay's notes on October 25 indicate that numerous tests were done and that he "believes all of these symptoms are related to a post-infectious etiology." (*Id.*). Zenner returned for a follow-up on November 16, 2010 for fatigue and polymyalgia and reported that she wasn't doing any better but had been able to work. (*Id.*).

Dr. Barclay's treatment notes from 2011 show that Zenner made office visits on March 22, April 12, May 2, May 4, July 6, July 20, September 14, October 6, October 11, November 8, and November 28. (Tr. 4F). The notes on eight of those eleven visits reflect complaints of pain on Zenner's part including complaints of joint pain at multiple sites, back pain, knee pain, neck pain, and headaches. The records show that Zenner had seen a rheumatology specialist who believed she had fibromyalgia, and notes that more tests had been ordered.

2

Zenner visited Dr. Barclay's office five times in 2012. (Tr. 4F). The notes from each of those visits reflect pain, polyarthralgia, fatigue, and fibromyalgia. On March 6, 2012, the treatment notes indicate polyarthralgia and polymyalgia for an unclear reason, that "did seem to follow a viral or mycoplasma illness about 18 months ago and she has been miserable since then." The notes further indicated "she is bothered by pain in hips, forearms, and knees," "she is not performing well at work and has been written up by her boss," and "exam reveals tenderness in shoulders, arms, and legs." On August 2, 2012, the treatment notes state "Patient says that Savella didn't help her fibromyalgia pain" and that Zenner was contemplating leaving her job due to her pain and lack of energy.

The records reflect three visits in 2013, two of which note pain in multiple locations. Dr. Barclay's notes on June 7, 2013 discuss chronic pain in Zenner's arms and right hip, trouble getting to and staying asleep, chronic fatigue, and stiffness/swelling of the joints of her arms and hands. (Tr. 4F). In 2014, Zenner visited Barclay on February 6, May 1, August 6, and October 22. (Tr. 4F, 5F). The notes from all but one of those visits mention back and joint pain, polyarthralgia, bilateral knee pain, carpal tunnel pain, and neck pain. The notes from May 1, 2014 reflect that an x-ray of Zenner's knees did reveal some patellofemoral problems but no arthritis. (Tr. 5F). On October 22, Dr. Barclay noted "neck pain shooting down her right shoulder" and that she was "incapable of working at this time." He further noted that she had not abused her pain medications in the past and was willing to sign a pain medication agreement. (Tr. 7F).

In 2015, Zenner visited Dr. Barclay on February 10, May 7, July 2, and October 26. Dr. Barclay's records from each of those visits reflect evaluation of Zenner's pain medications as well as Dr. Barclay's attempts to address back pain and knee joint pain. (Tr. 10F). On October 26, 2015, Dr. Barclay noted that she "continues to have severe generalized pain with GERD and low back pain and polyarthralgia," and "she requires multiple meds per day and is unable to work outside the home at this time in a meaningful way." (Tr. 10F). The last visit to Dr. Barclay in the record presented to the ALJ was on January 22, 2016, where he noted "left side sciatica that is getting worse." (Tr. 10F).

On February 23, 2016, Dr. Barclay signed a medical source statement (MSSP) indicating that Zenner was suffering pain in her hips, knees, elbows, shoulders, back, and left-side sciatica, that her pain was severe and throughout many joints. (Tr. 12F). He notes that Zenner had post-infectious polyarthralgia, an abnormal MRI on her knees and left-side spine, and that her pain medications could cause drowsiness and poor focus. He advised limitations including, but not limited to, substantial breaks due to pain, chronic fatigue, muscle weakness, and the adverse side effects of her medications; that she elevate her legs 50% of the time due to sciatica, that she would be off-task 25 percent of the time, and that she would need to be off work or leave work early more than four days per month.

On April 12, 2016, Dr. James Henderson performed a consultative exam. (Tr. 14F). Although Dr. Henderson found Zenner had a normal range of motion, he did note back

and neck pain as well as shoulder, hip, and knee pain consistent with Dr. Barclay's records and report.

**Legal Standard**

The Social Security Act provides that the court must accept the factual findings of the Commissioner if they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is "such evidence as a reasonable mind might accept to support the conclusion." *Barkley v. Astrue*, 2010 WL 3001753 at *1 (D. Kan. July 28, 2010) (citing *Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994)). Evidence is insubstantial when it is overwhelmingly contradicted by other evidence. *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994). The court must "neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting *Casias v. Sec. of Health & Human Servs.*, 933 F.3d 799, 800 (10th Cir. 1991)). But, the court must determine whether the Commissioner's final decision is "free from legal error and supported by substantial evidence." *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). An ALJ's decision must be affirmed where it is supported by the evidence as a whole, even if the court may have reached a different result on the record. *Ellison*, 929 F.2d at 536.

A claimant is disabled if she suffers from a physical or mental impairment which stops the claimant "from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months." *Brennan v. Astrue*, 501 F.Supp.2d 1303, 1306-07 (D. Kan. 2007) (citing 42 U.S.C. § 423(d)). The impairment "must be severe enough that she is unable to perform her past relevant work, and further

cannot engage in other substantial gainful work existing in the national economy, considering her age, education, and work experience." *Barkley*, 2010 WL 3001753 at *2 (citing *Barnhart v. Walton*, 535 U.S. 212, 217-22 (2002)).

The Social Security Administration has established a five-step sequential evaluation process to determine whether an individual is disabled. *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010); *see also* 20 C.F.R. §404.1520(a)). The steps are to be followed in order and are designed so that if a claimant is determined to be or not to be disabled at any step of the process, the evaluation will end at that step. *Barkley*, 2010 WL 3001753 at *2. Steps one through three ask the ALJ to assess (1) whether the claimant has engaged in substantial gainful activity since the onset of the alleged disability; (2) whether the claimant has a severe, or combination of severe, impairments; and (3) whether the severity of those impairments meets or equals a designated list of impairments. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also Barkley*, 2010 LW 3001753 at *2 (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)). If the impairment or combination of impairments does not meet or equal a listed impairment, then the ALJ must determine the claimant's "residual functional capacity" (RFC). The claimant's RFC is the ability "to do physical and mental work activities on a sustained basis despite limitations from her impairments." *Barkley*, 2010 WL 3001753 at *2; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. Once the ALJ has determined the claimant's RFC she moves on to steps four and five, which require a determination of whether the claimant can either perform her past relevant work or can perform other work that exists in the national economy. *Barkley*, 2010 WL 3001753 at *2 (citing *Williams*, 844 F.2d at 751).

**Discussion**

At the time of the onset of the claimed disability, Zenner was 42 years old. During the five-step process, the ALJ first found that Zenner had not engaged in any substantial gainful activity since the alleged disability onset date of October 15, 2012. Next, the ALJ determined that Zenner suffered from multiple severe impairments that significantly limited her ability to perform basic work activities: obesity, fibromyalgia, left sciatic nerve pain, depression, attention deficit hyperactivity disorder, and anxiety. Because none of those impairments, alone or in combination, met or equaled the severity of a listed impairment, the ALJ moved to a determination of Zenner's RFC. Based on Zenner's symptoms, the ALJ found that Zenner had the RFC to perform light work in a job such as office helper, mail clerk, or collator operator, which existed in significant numbers in the national economy for individuals of Zenner's age and work experience.

It is the ALJ's determination of Zenner's RFC that is at issue in this matter. During his determination of the RFC, the ALJ noted that several years prior to the alleged October, 2012 onset date, Zenner had reported problems with fibromyalgia. But, the ALJ decided a diagnosis of fibromyalgia was not medically determinable because "there was … no evidence of pain in all quadrants, tender point testing, or attempts to rule out other causes for her various pain complaints (some of which do appear to be attributed to other conditions)."

In his review of Zenner's medical records, the ALJ concluded that the "2012 and 2013 records contain only sporadic and vague mentions of pain." The 2014 records reflected a complaint of knee pain, but the ALJ noted "Despite her pain complaints and

7

the reports that she could not work due to pain, she was able to go kayaking in June and July 2014." The "2015 records also contain some reports of knee and back pain," but the ALJ found that "other than these sporadic complaints of pain, her records do not contain notable physical findings or supporting examination findings."

The ALJ found that Zenner participated in a consultative examination in April 2016, where she alleged various pain complaints and chronic fatigue which had not been documented in her prior records – but the examination itself indicated Zenner had a full range of motion, normal straight leg raise, and no difficulty with orthopedic maneuvers. The ALJ ultimately requested an opinion from an impartial medical expert, Anne Winkler, M.D., "[g]iven the claimant's pain complaints but sparse exam findings." Dr. Winkler provided an opinion containing the RFC limitations ultimately adopted by the ALJ, which the ALJ found were "consistent with the claimant's pain complaints as documented in the longitudinal record." The ALJ gave Dr. Winkler's opinion "significant weight" because it "was based on evaluation of [Zenner's] condition over time" and "was generally persuasive."

In contrast, the ALJ gave two opinions submitted by Andrew Barclay, M.D., Zenner's treatment provider, "little weight" and "very little weight."[2] A Medical Source

---

[2] The ALJ largely disregarded the opinions of James Henderson, M.D., who examined Zenner in connection with her disability application, and Robert Hughes, M.D., who reviewed Zenner's medical records in January, 2015 in regard to her application. Zenner's appeal does not allege error with respect to the weight given to these opinions, and to the extent the court has consulted or analyzed these decisions it has done so only to confirm whether they are consistent with Dr. Barclay's MSSP. Further, as Zenner has not appealed the portions of the ALJ's ruling related to her mental limitations, the court has not analyzed and does not address provider opinions related solely to those issues.

Statement (MSSP) dated February 23, 2016 indicated that Zenner could not complete a workday, could only work for less than four hours per day, and could not frequently lift any weight at all, among other limitations. The ALJ found that these limitations were "very extreme … for the minimal documentation in the record," and that "even the claimant's pain complaints appear to infrequent and too minimal to support such debilitating limitations." The ALJ also indicated that Dr. Barclay's opinion "lack[ed] … objective findings or clear diagnoses." The February 23, 2016 MSSP was given little weight.

Another opinion given in February, 2014 stated that Zenner was "unable to work due to polyarthralgia." The ALJ gave this opinion "very little weight," finding there was no basis for the opinion given a) lack of indication of cause of Zenner's pain complaints; b) lack of objective findings indicating limited functioning; and c) no indication of Zenner's actual limitations and abilities. The ALJ also opined that Dr. Barclay's opinion was outside of his expertise, and would have required consideration of relevant vocational factors the doctor was not able to address.

The only issue raised in Zenner's appeal is whether the ALJ erred in his decision to assign little weight to the opinion of Zenner's treating physician Dr. Barclay, while giving significant weight to the opinion of non-examining physician Dr. Winkler. (*See* Dkt. 11, p.1). "Medical opinions are statements from physicians … that reflect judgments about the nature and severity of a claimant's impairments including claimant's symptoms, diagnosis and prognosis." *Hollinger v. Colvin,* 2015 WL 449581 at *6 (D. Kan. May 22, 2015) (citing 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). As a non-examining

9

source Dr. Winkler's opinion would typically be entitled to the least weight of all. *See Drapeau v. Massanari*, 255 F.3d 1211, 1214 (10th Cir. 2001) ("'the findings of a nontreating physician based upon limited contact and examination are of suspect reliability.'") (quoting *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987)); *see also Hollinger v. Colvin*, 2015 WL 2449581 at *7 (D. Kan. May 22, 2015) ("The opinion of a non-treating source who only examined claimant once is not entitled to the sort of deferential treatment according to a treating physician's opinion. Further, the opinions of *non-examining* sources are generally entitled to even less weight than the opinions of non-treating sources.") (internal citations omitted) (emphasis in original).

Treating source opinions, in contrast, "are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations." *Wickliffe v. Berryhill*, 2017 WL 3159354 at *2 (D. Kan. July 25, 2017). An ALJ must first determine whether the opinion qualifies for "controlling weight," to which it is entitled if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).

Even if a treating physician's opinion is not given controlling weight, however, the opinion is still entitled to deference and must be assessed under the following factors: (1) the length of the treatment relationship; (2) the nature and extent of the relationship; (3) the degree to which the opinion was supported by relevant evidence; (4) the consistency between the opinion and record as a whole; (5) whether or not the doctor is a specialist;

and (6) other factors that either do or do not support the doctor's opinion. *Wickliffe,* 2017 WL 3149354 at *2 (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003)); *see also* 20 CFR §§ 404.1527, 416.927. It is error for an ALJ not to consider those factors when weighing a treating physician's opinion. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). An ALJ's discussion of the factors is inadequate if the court would be left to speculate as to what specific evidence led the ALJ to his conclusion. *See id.* (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)). Ultimately, after consideration of the listed factors, the ALJ must give "good reasons" for the weight ultimately assigned to the treating physician's opinion. *Id.*

Here, it is evident the ALJ determined that Dr. Barclay's opinion was not entitled to controlling weight but there is no indication that the ALJ considered the above-listed factors to determine whether the treating physician's opinion was entitled to any other level of deference. For example, ALJ's opinion does not discuss the fact that Dr. Barclay had been treating claimant as her primary care physician for over 20 years and that Dr. Barclay appears to have been very involved Zenner's care and treatment from at least August of 2010 forward. In fact, between October 15, 2010 and January 22, 2016, Dr. Barclay's treatment records show a total of 28 visits referencing pain complaints, extreme fatigue, polymyalgia and/or polyarthralgia, fibromyalgia, chronic pain, multiple tender joints, and sciatica. Reference in the treatment records to a diagnosis of fibromyalgia (Tr. 417) ("She does have fibromyalgia but has not yet tried Savella…") and Zenner's repetitive complaints show consistency between the record and Dr. Barclay's ultimate

assessment of Zenner's limitations, but also show that Dr. Barclay's opinion was not entirely unsupported by relevant evidence as the ALJ's opinion suggests.

The Commissioner argues that "most" of Zenner's visits to Barclay pre-dated her alleged onset of disability, and that she only saw Dr. Barclay 13 times in the four-plus year "relevant" time period. The Commissioner further argues that Zenner did not seek any "specialized" treatment during that time, and that her complaints of pain changed rather than being one consistent, ongoing complaint. (Dkt. 12, p. 8). The court finds these arguments unavailing.

First, the Tenth Circuit has realized that even if a doctor's medical observations regarding a claimant's allegations of disability date to periods before the alleged onset date, those observations are relevant to the claimant's medical history and must be considered by the ALJ. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Second, the court finds Zenner's pre-onset visits to Dr. Barclay beginning in August, 2010 are directly relevant to her claims in this case given Dr. Barclay's conclusion that Zenner's complaints of pain and fatigue date back to her hospitalization for pneumonia. Third, the court finds the fact that Zenner's complaints of pain changed over time as being consistent with the Tenth Circuit's characterization of the symptoms of fibromyalgia, as discussed below. Fourth, the court rejects the assertion that Zenner did not seek "specialized" treatment as being singularly indicative of a lack of suffering. The medical records reflect that Barclay attempted or desired to refer Zenner to physical therapy and Zenner refused, not because she did not want to participate in the therapy, but because she did not have insurance that would cover the expense. Finally, the court notes that even with "only" 13 visits in

four years, Zenner would still have been seeing Dr. Barclay an average of once every three months with the same complaints, which a could reasonably be characterized as something other than sporadic.

Given the evidence in the record supporting Dr. Barclay's assessment and the lack of discussion of the listed factors by the ALJ, the court cannot determine exactly what the ALJ based his decision upon when he referenced the "infrequent" and "minimal" complaints of pain that he believed were insufficient to support Dr. Barclay's MSSP. The ALJ further failed to articulate specific reasons why Dr. Barclay's opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques or why it was inconsistent with other substantial evidence in the record. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). Because the court is left to speculate, the court cannot determine whether the ALJ applied the correct legal standard when weighing Dr. Barclay's opinion as a treating physician.

The court likewise finds the ALJ's decision regarding the weight given to Dr. Winkler's opinion was not supported by substantial evidence. In a case similar to Zenner's, the ALJ rejected a treating physician's opinion because it was "shaky," "not entitled to controlling weight," not supported by the record or the claimant's allegations, and outside of the doctor's field of expertise. *McKinsey v. Colvin*, 2015 WL 4243521 at *9 (D. Kan. July 10, 2015). In contrast, the opinion of a non-examining physician was given significant weight because his opinion was based upon a review of the relevant medical records and the proposed limitations were consistent with the claimant's reports of fatigue and pain. *Id.* at *10. This court on review found that the non-treating physician

had failed to respond to questions asking him to identify medical evidence upon which he based his limitations and failed to identify medical evidence in response to interrogatories. The court remanded the matter because the non-examining source's opinion was "not supported by persuasive evidence and the ALJ's reasons for granting it significant weight [were] not legitimate." *Id*. at *11.

The court's review of Dr. Winkler's MSSP shows that in a number of categories – namely lifting/carrying, sitting/standing/walking, use of hands, use of feet, postural activities, and environmental limitations – Dr. Winkler was asked to "[i]dentify the particular medical or clinical findings … which support your assessment or any limitations and why the findings support the assessment." Dr. Winkler's statement referred to no specific medical or clinical findings that supported her assessments in those areas. Categories VIII and IX on the MSSP were not answered at all, despite the fact that Category VIII required only a yes or no response.

Dr. Winkler's responses to the ALJ's interrogatories were also not particularly detailed. When asked to specify Zenner's impairments and "[c]ite to the objective medical findings that support your opinion," Winkler listed only "fibromyalgia 4F" referring to Zenner's treatment records from Dr. Barclay's office dating between 10/15/10 and 2/13/14, but then concludes in response to interrogatory 7 that "fibromyalgia treated with exercise," which is not a conclusion fairly supported by Dr. Barclay's treatment records. In her response to interrogatory 9, Winkler indicated "there is no evidence to support post-infectious arthritis (normal PE & lab) & opinions in exhibit 12F [Barclay's MSSP]/14F [Dr. Henderson's MSSP] not supported by PE or other objective evidence."

14

Barclay's treatment records, however, repeatedly mention polyarthralgia, rather than arthritis, including a note in March 2012 that Zenner's polyarthralgia "did seem to follow a viral or mycoplasma illness about 18 months ago and she has been miserable since then" and a note in June 2012 that Zenner "still has polyarthralgia which I have not been able to sort out." Finally, in response to question 10 which requested "specific evidence supporting your answers on the MSS" Dr. Winkler wrote "see form," but her responses on the MSS form itself do not refer to any specific medical evidence in support of her conclusions.

When an ALJ determines the opinion of a treating source to be inconsistent with the medical record, "the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around." *Wickliffe v. Berryhill*, 2017 WL 3149354 (D. Kan. July 25, 2017). Both the ALJ's Notice of Decision and Dr. Winkler's opinions refer to a lack of "objective findings" in Dr. Barclay's treatment records, but the court finds the reference to a lack of "objective findings" to be problematic with respect to Zenner's fibromyalgia. This court has explained that fibromyalgia is a subjective disease, such that negative test results and/or a lack of "objective findings" do not necessarily support the conclusion that the claimant is not suffering from the condition. *Jones v. Astrue*, 2010 WL 2464845 at *3 (D. Kan. Mar. 22, 2010) ("the symptoms of fibromyalgia are entirely subjective, and there are no laboratory tests to identify its presence or severity."). "Fibromyalgia is diagnosed entirely on the basis of patients' reports and other symptoms." *Id.* at *4 (citing *Brown v. Barnhart*, 182 Fed. Appx. 771, 773 n.1 (10th Cir. May 25, 2006). The Commissioner's response correctly notes the

15

general "rule of thumb" that a diagnosis of fibromyalgia can be based upon observance of 11 to 18 "tender points" (*see Jones*, 2010 WL 2464845 at *4), but the Tenth Circuit in *Gilbert v. Astrue* observed that the tender points are simply a method to discriminate between fibromyalgia and other rheumatic diseases, noting that other principal symptoms include pain "all over," fatigue, disturbed sleep, and stiffness. 231 Fed. Appx. 778, 783 (10th Cir. 2007).

"Courts have recognized that the pain suffered by those diagnosed with fibromyalgia can be disabling." *Ward v. Apfel*, 65 F.Supp.2d 1208, 1213 (D. Kan. 1999) (citing *Sarchet v. Chater*, 78 F.3d at 309). In *Gilbert*, an ALJ erred by failing to sufficiently consider a treating physician's opinion regarding fibromyalgia and the functional limitations it could cause. 231 Fed. Appx. at 783. The court noted that while it may have been appropriate for the ALJ to focus on objective findings with respect to the claimant's individual joints on claims of arthritis and disc disease, "the lack of objective test findings noted by the ALJ is not determinative of the severity of her fibromyalgia." *Id.* at 784 (citing *Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (reversing denial of benefits where ALJ did not give treating physician opinion of disability based on fibromyalgia controlling weight, and "effectively required 'objective' evidence for a disease that eludes such measurement.")).

In *Priest v. Barnhart*, 302 F.Supp.2d 1205, 1214 (D. Kan. 2004) , the ALJ showed a "fundamental misunderstanding of fibromyalgia in asserting that there must be objective documentation of this condition (other than the plaintiff's complaints) before there is a medically determinable impairment." Instead, the "objective medical evidence of

fibromyalgia" could be found in the claimant's "consistent complaint during her relatively frequent physician's visits of variable and unpredictable pain, stiffness, fatigue, and ability to function." *Id.* (quoting *Brosnahan v. Barnhart*, 336 F.3d 671, 678 (8th Cir. 2003)) (quotation marks omitted).

As in *Priest*, the record here shows evidence of fairly consistent complaints during Zenner's visits to Dr. Barclay's office of chronic pain, fatigue, and lack of ability to function. And, as in *Priest*, nothing in the record shows that either Dr. Barclay or any of the other medical sources of record questioned the veracity of Zenner's complaints or suggested that additional testing be done that Zenner refused. Although this court does not substitute its judgment for the ALJ's, "[t]his appears to be an instance where the ALJ has erroneously substituted his own judgment about a diagnosis for that of the treating physicians." *See Priest*, 302 F.Supp.2d at 1214.

"Although an ALJ need not discuss every piece of evidence," the record must show that the ALJ at least considered all of the evidence with respect to a claimant's fibromyalgia. *Gilbert*, 231 Fed. Appx. at 784 (reversing denial of benefits where the ALJ failed to sufficiently address the claimant's fibromyalgia in assigning weight to the claimant's treating physician opinion regarding her functional capacity). The record before the court shows that while the ALJ acknowledged Zenner's fibromyalgia, he rejected both her characterization of the impacts of that disease and her treating physician's characterization of her fibromyalgia-related limitations in a completely perfunctory manner.

Further, based upon its review of the record in its entirety, the court finds the ALJ's conclusion that Zenner's complaints of chronic pain, fatigue, and difficulty sleeping were vague and sporadic not to be supported by the evidence – Dr. Barclay's treatment record shows that on nearly every visit Zenner made to his office, which were not infrequent, she reiterated those complaints and Dr. Barclay continued to adjust medications and dosages in attempt to address Zenner's symptoms. In *Fox v. Colvin*, this court previously remanded an ALJ's decision where there was "no indication…that the ALJ realized or acknowledged that the symptoms, allegations, medical records, and medical opinions regarding fibromyalgia are consistent with negative findings on objective medical testing. In fact, a diagnosis of fibromyalgia would be inconsistent with symptoms which produce *positive* findings on objective medical testing." 2016 WL 164299 at *5 (D. Kan. Jan. 13, 2016) (emphasis in original).

To the extent the ALJ rejected Dr. Barclay's opinion because it was based upon Zenner's subjective complaints of pain, that rejection must be supported by the treating physician's own records to withstand review. *See Fox v. Colvin*, 2016 WL 164299 at *5 (D. Kan. Jan. 13, 2016) (citing *Victory v. Barnhart,* 121 Fed. Appx. 819, 823—24 (10th Cir. 2005) for the proposition that "[a] conclusion that the physician's opinion is based only on a plaintiff's subjective allegations must be based upon the evidence taken from the physician's records."). Nothing in Dr. Barclay's treatment records indicates that he doubted or questioned Zenner's complaints or that her complaints were not substantiated by his actual observations of her over the many years that he served as her treating physician.

**Conclusion**

An ALJ's incorrect application of a legal standard or decision based upon insufficient evidence is grounds for reversal. *Washington v. Shalala*, 37 F.3d 1427, 1439 (10th Cir. 1994). In this instance, the court finds the ALJ erred in both respects. Because the ALJ refused to give the opinion of treating physician Barclay controlling weight, the ALJ was obligated to engage in an analysis of the factors to determine what deference Barclay's opinion should be afforded. The ALJ's analysis is insufficient for the court to determine whether the process was appropriately followed. Further, the ALJ's decision to reject the opinion Zenner's treating physician in favor of the opinion of non-examining physician Dr. Winkler is not supported by substantial evidence, particularly in light of Dr. Winkler's failure to support her own conclusions with specific medical evidence and findings.

The court declines to direct the ALJ to grant Dr. Barclay's opinion controlling weight, or to direct the ALJ to find Zenner disabled, but remands this matter to the Commissioner for further consideration consistent with this opinion.

IT IS SO ORDERED.

Dated this 26th day of September, 2019.

/s/ J. Thomas Marten
THE HONORABLE J. THOMAS MARTEN
United States District Court