IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF KANSAS,

D.Z.,[1]

               Plaintiff,

    Vs.                                       No. 18-1191-SAC

KILOLO KIJAKAZI,
Acting Commissioner
of Social Security,

            Defendant.


MEMORANDUM AND ORDER

On January 13, 2014, the plaintiff D.Z. filed an application for Title II disability and disability insurance benefits claiming her disability began on October 15, 2012. Her application was denied initially and on reconsideration before she requested and appeared before the administrative law judge ("ALJ") on February 26, 2016. Fifteen months later and after the submission of additional evidence, the ALJ issued an unfavorable decision. The Appeals Council found no basis for granting D.Z.'s timely request for review. D.Z. next filed her complaint for judicial review on July 2, 2018, arguing the single issue whether "the ALJ failed to give the

---

[1] The use of initials here is pursuant to the court's efforts to preserve privacy interests. Even though the history of this litigation tempers the privacy interests, the court will followits practice.

opinion of D.Z.'s treating physician appropriate weight." ECF# 14, pp. 1-2. The court filed its memorandum and order on September 27, 2019, finding for the claimant on her argued issue and remanded the case for further consideration consistent with the order. ECF# 14. On remand, the ALJ entered a final favorable decision on February 26, 2021, finding that D.Z. had been disabled since October 15, 2012. ECF# 18-3, p. 11. Thus, the Commissioner's Notice of Award dated June 15, 2021, determined that D.Z's "past-due benefits for April 2013 through April 2021" were $150,215.00. ECF# 18-4, p. 3. The Notice explains that 25% of her past-due benefits or $37,553.75 have been withheld to pay any authorized legal fees and that $31,553.75 remain for any court-approved fee award for legal work done before the court. ECF# 18-4, p. 4.

The plaintiff's counsel representing her before his court has now filed a motion for attorney fees pursuant to 42 U.S.C. § 406(b) seeking an order an award of the balance of $31,553.75 as reasonable under the statute. ECF# 18. The written fee agreement between D.Z. and her counsel provided that if benefits were awarded after winning by reversal or on remand then the attorney was entitled as fees for her work before the district court 25% of the awarded back pay and that if these § 406(b) fees are awarded then the plaintiff would be refunded the lesser amount of the § 406 fees or the EAJA fees collected under 28 U.S.C. § 2412. ECF# 18-5. The

court has entered an order granting EAJA fees in the amount of $4,195.00. ECF# 17. In the pending motion, counsel notes a $6,000 payment has been made for legal work before the agency. Counsel also calls the court's attention to the Supreme Court's decision in *Culbertson v. Berryhill*, 139 S.Ct. 517 (2019), which held that the 25% cap in § 406(b)(1)(A) applied only for court work and did not function as a total cap on agency work and court work combined. The Commissioner has filed a response taking no position on this fee request and deferring "to the court's sound discretion as to the reasonableness of the fee award representing compensation for Plaintiff's attorney's time at an effective rate of $1,680.64." ECF# 21, p. 3.

Section 206(b) of the Social Security Act, 42 U.S.C. § 406(b), provides that "[w]henever a court renders a judgment favorable to a claimant . . . the court may determine and allow as part of its judgment a reasonable [attorney] fee . . . not in excess of 25 percent of the past due benefits." The Supreme Court in *Gisbrecht v. Barnhart*, 535 U.S. 789, 792-93 (2002), disapproved of § 406(b) fee award determinations that rested exclusively on lodestar calculations and that ignored "the primacy of lawful attorney-client fee agreements." Instead of displacing contingent-fee agreements, § 406(b) "instructs courts to review for reasonableness fees yielded by those agreements." *Id*. at 808-09. It remains, however, the burden of the attorney to show the requested fee falls within 25% limit and

3

"is reasonable for the services rendered." *Id.* at 807. Thus, the statute "calls for court review of such arrangements as an independent check, to assure that they yield reasonable results in particular cases." *Id.* (footnote omitted).

The Tenth Circuit has analyzed *Gisbrecht* as outlining some "examples of proper reasons for reducing § 406(b) requests" that include "(1) when 'the character of the representation and the results the representative achieved" were substandard; (2) when 'the attorney responsible for delay' that causes disability benefits to accrue 'during the pendency of the case in court'; and (3) when 'the benefits are large in comparison to the amount of time counsel spent on the case.'" *Gordon v. Astrue*, 361 Fed. Appx. 933, 935 (10th Cir. 2010) (quoting *Gisbrecht*, 535 U.S. at 808-09). The Court did not regard these factors to be exclusive or final as the "[j]udges of our district courts are accustomed to making reasonableness determinations in a wide variety of contexts." 535 U.S. at 808. For example, the *Gisbrecht* Court cited *McGuire v. Sullivan*, 873 F.2d 974 (7th Cir. 1989), for when fees have been reduced "based on the character of the representation and the results the representative achieved." 535 U.S. at 808. Taking this cue, courts have employed the *McGuire* six-factor test that includes, "'time and labor required; skill required; contingency of fee; amount involved and result attained; experience, reputation, and ability of attorney; and awards in similar cases.'"  *Gordon*,

4

361 Fed. Appx. at 935 (quoting *McQuire*, 873 F.2d at 983); *see Scherffius v. Astrue*, 296 Fed. Appx. 616, 619 (10th Cir. 2008); *Gardipee v. Saul*, No. 20-1001-JWL, 2021 WL 826206 at *2 (D. Kan. Mar. 4, 2021).

Upholding the primacy of the contingency fee agreement here, the court notes the plaintiff's counsel is entitled under it to receive 25% of any past-due benefits awarded on remand. This equals $37,553.75 which is what the Commissioner withheld and from which $6,000 has already been deducted to pay the maximum fees for agency work. In asking for $31,553.75, the plaintiff's counsel is asking for 21%, not 25%, of the past-due benefits, and thus, is not asking for the court to enforce the contingency fee agreement as written. Nor does the counsel argue that without collecting the full 25% in this case that the risk of loss in her Social Security disability practice will go uncovered.

The court finds nothing substandard about the quality and character of counsel's work or the results achieved here. As the counsel has averred, representing Social Security claimants is much of her practice and her specialization. ECF# 16-1, pp. 4-5. She is an experienced attorney in this field. The docket sheet shows the plaintiff's counsel did not contribute to any delay before this court. The *Gisbrecht* Court pointed out generally that "Congress was mindful, too, that the longer the litigation persisted, the greater the buildup of past-due benefits and, correspondingly, of legal fees

5

awardable from those benefits if the claimant prevailed." 535 U.S. at 804. In our case, the plaintiff's counsel's law firm did represent the plaintiff at the agency level. The administrative record suggests the plaintiff's agency counsel requested an extension for completing the medical record. This delay, however, did not contribute significantly to the agency taking almost four and one-half years at the administrative level before this case arrived in federal court and the additional 18 months on remand before the award of past-due benefits.

As the *Gisbrecht* Court said, "[i]f the benefits are large in comparison to the amount of time counsel spent on the case, a downward adjustment is . . . in order." 535 U.S. at 808. A "reviewing court should disallow 'windfalls for lawyers.'" *Id*. (citing and quoting *Rodriquez v. Bowen*, 865 F.2d 739, 746-47 (6th Cir. 1989)). In making this determination, the *Gisbrecht* Court said a court in assessing the reasonableness of a fee request could ask for the counsel's record of hours and a statement of normal billing charges used in noncontingent-fee cases. *Id.*

Analysis of this factor in this district has followed this line. *See Russell v. Astrue*, 509 Fed. Appx. 695, 697 (Affirmed as reasonable a fee award falling in the middle between the requested effective rate of $611 per hour and the counsel's normal rate of $275 per hour); *Cruse v. Saul*, No. 19-2488-KHV, 2021 WL 1026741, at *2 (D. Kan. Mar. 17, 2021) (Effective

6

hourly rate of $297.80 was within the range of $258 to $418); *McElroy v.
Saul*, No. 19-2456-JTM, 2020 WL 6504540, at *2 (D. Kan. Nov. 5, 2020)
(Rejected effective hourly rate of $487 but granted fees based on an
effective hourly rate of $450); *Potter v. Saul*, No. 17-4050-JWL, 2020 WL
584447, at *1 (D. Kan. Feb. 6, 2020) (Awarded effective hourly rate of
$450); *Breitkreutz v. Commissioner*, No. 17-1261-SAC, 2020 WL 2217281,
at *1 (D. Kan. May 7, 2020) (Rejected an effective hourly rate of $738.80
but granted fees resulting in an hourly rate of $450). The court finds the
counsel's supporting documents show she reasonably spent 18.4 hours on
this case and her law clerk reasonably spent 6.30 hours summarizing the
transcript and drafting an initial statement of facts. In calculating the
effective hourly rate, the court combines those hours. *See Williams v.
Berryhill,* No. 15-1255-SAC, 2018 WL 3609753, at *2 (D. Kan. Jul. 27,
2018). Counsel's requested amount for fees results in an effective hourly
rate of $1,277.48 or ($31,553.75 ÷ 24.7). Following the line of analysis
used in this district, the court's independent check of the requested
contingency fee indicates this is an unreasonable windfall not in keeping with
the counsel's time and work expended in this litigation. The court's
conclusion that this is a windfall here does not rest primarily or exclusively
on this lodestar calculation. As discussed later, such a fee does not seem
reasonable considering the complexity of the case, the lawyering skills

required to handle it, the particular risks involved in this case, and the lawyer's work not being the primary explanation for the level of success here.

To make her requested fee seem less a windfall under the lodestar calculation, counsel introduces a mitigating class-based risk of loss factor which is based exclusively on the calculated risk of loss in all Social Security disability cases. Citing data from 2001 and 2012, counsel arrives at a factor from totaling the number of federal Social Security disability cases reversed with benefits and those remanded with a subsequent award of benefits. She argues that the required contingent nature of her fee recovery means the prevailing client must be charged 2.8 times her normal hourly rate to make up for her class-based risk of loss. Using this factor here, counsel calculates an effectively hourly rate for non-contingent work of $456.24 ($1,277.48 ÷.28), which is double the EAJA's statutory rate for 2018 and 2019 work.

Counsel cites *Vaughn v. Astrue*, No. 06-2213-KHV, 2008 WL 4307870, at *2 (D. Kan. Sep. 19, 2008), in support of her argument. A close reading of *Vaughn* shows the court only acknowledged the argument but did not use it. Instead, the court said the effective hourly rate of $965.24 was "exorbitant" and only awarded fees based on an hourly rate of $344.73. *Id*. at *1-*2. In this district, this class-based risk of loss approach did not gain

traction after *Vaughn*. Judge Lungstrum rejected it finding "no reasoned justification" for this multiplier. *See Otte v. Saul*, No. 18-2006-JWL, 2020 WL 6318689, at *3 (D. Kan. Oct. 28, 2020) (discussing *Whitehead v. Barnhart*, No. 01-0095-CV-SW2SSAECF, 2006 WL 9100004, at *2 (W.D. Mo. Apr. 7, 2006), for its use of the 2.8 multiplier "to reduce [the apparent hourly rate] to an equivalent hourly rate of non-contingent work based on the statistical likelihood" of winning a contingent Social Security disability case). Judge Marten followed *Otte* in *McElroy v. Saul*, No. 19-2456-JTM, 2020 WL 6504540 at *1 (D. Kan. Nov. 5, 2020).

Most recently, the decision of *Gardipee v. Saul*, No. 20-1001-JWL, 2021 WL 826206 (D. Kan. Mar. 4, 2021), is the first in this district to recognize the 2.8 multiplier and apply it as argued. Counsel did not cite this decision in her memorandum filed here, although she was also the plaintiff's counsel in *Gardipee*. The court there awarded the full 25% contingent fee with an effective hourly rate of $1,001.90 and accepted counsel's argument for using the 2.8 class-based risk factor to show this high effective hourly rate was "equal to an hourly rate of $357.82 for non-contingent work which is greater than the average attorney rate in Kansas of $244 but less than rate in Kansas for personal injury attorneys, $368, or labor and employment attorneys, $404." *Id*. at *3. The court said this was the first time that counsel had provided data and citations to support a "36% chance of

winning in Social Security cases." *Id.* As a general proposition, the court
added, "that the contingent nature of the fee justifies a fee award which is
higher than the normal hourly rate charged by practitioners when the
claimant prevails in order to encourage practitioners to take such cases, and
to allow for cases which are not successful." *Id.* The court concluded by
saying "that in the particular circumstances of this case the court finds
award of the full 25% of past due benefits is reasonable." *Id.*

 The court recognizes that the 2.8 multiplier is a quantifiable way
of accounting for the contingent nature of fee arrangements required in
Social Security disability cases and for the risk of loss involved in this field of
practice. This is not to say that these considerations of class-based
contingency fees and class-based risk of loss have gone unconsidered in past
§ 406(b) fee determinations. Even without specifically mentioning these
practice-based considerations, the courts have weighed them in exercising
the discretion inherent in checking for reasonableness in each case and
typically awarding fees with an effective hourly rate well above the non-
contingent hourly rate. The court accepts that the multiplier is a factor in
considering the reasonableness of a fee request, although it's use as a
consideration seems likely to be limited to those cases when past-due
benefit awards are substantial. The court believes this circumstance begs the
questions why a benefit award is high in a particular case and whether

10

counsel should benefit from the resulting additional fees under the contingency agreement no matter the reason for the higher past-due benefits. The court believes these questions are consistent with the *Gisbrecht* Court's concern over the attorney receiving a windfall. In other words, why is a larger fee reasonable under the particular circumstances of the case? The court believes the multiplier's relevance and weight should not overwhelm the case-specific circumstances.

The circumstances here counsel against a blanket application of the multiplier. This single-issue disability case was not complex. Nor was the administrative record here involved, lengthy, or disputed. The legal arguments were straight forward and were nothing unique from what counsel has regularly argued in other disability cases. This case did not call on counsel to exercise any skills, insights, or analysis beyond what is typically expected in such cases. The court does not consider this case to pose any unusual risk of loss for a disability case. Finally, the substantial recovery in this case is not simply explained by the lawyering skills used here but is significantly explained by the extended delay at the administrative level.

In *Gordon v. Astrue*, 361 Fed. Appx. 933, the Tenth Circuit noted that the district court's analysis began with this determination:

that an award in the amount requested would be excessive given the

result actually obtained:   a stipulated remand for the purpose of reevaluating the severity of Mr. Gordon's alleged disability and for consultation with a vocational expert. The court also noted that the case then "languished at the administrative level" for years and that this delay, not just the firm's contributions, contributed significantly to "the unusually large award of back benefits" such that "[t]o grant the amount requested would result in a windfall" to the firm.

361 Fed. Appx. at 936. In affirming the district court's analysis as consistent with *Gisbrecht,* then Judge Gorsuch for the Tenth Circuit wrote:

The court mentioned the firm's assertions of special expertise in Social Security cases, including its claim that the firm "spends fewer hours per case than other practitioners," D. Ct. Op. at 5, and the court stated specifically that it had considered the firm's "risk of loss" argument, *id*. at 6. Additionally, the court was well aware that the vast majority of both delay and effort had taken place at the administrative level, for which the firm had already been compensated at the maximum allowed rate. As to the large lump sum payment recovered by Mr. Gordon, the district court reasonably found that much of this was due to the numerous delays occasioned by the Commissioner, rather than solely to the firm's effort.

361 Fed. Appx. at 936.

D.Z.'s substantial award here is due to past-due benefits accruing over eight years from April 2013 through April 2021. She filed her disability application in January of 2014, and her appeal did not reach federal district court until July of 2018, four and one-half years later. The federal case was decided and remanded in 14 months where it took another 18 months for an award of benefits. Of the eight years, approximately six of them are attributable to agency level proceedings. As the court said in *Gordon*, the languishing and delay of this case at the administrative level

contributed significantly to the unusually large award of past-due benefits. The court agrees with the analysis there that an award based on this circumstance would result in a windfall to counsel's firm. The plaintiff's firm has been compensated at the maximum amount for its work at the agency level. An award of fees as requested would far exceed awards given in similar disability cases.

In looking at the class-based risk of loss assumed by an attorney in an average disability case, the court realizes the intended result is to achieve an effective hourly rate within the range of the non-contingent hourly rate of $225 charged by Kansas lawyers practicing in elder law or the median hourly rate of $250 in Kansas. ECF# 18, Ex. 5, p. 18. Following this approach, a reasonable fee award would be in the range of $15,561 to $17,290.

The court has considered all the relevant factors including, the contingency fee agreement, the fee awards in similar cases, the non-contingent fee rates ($225-250) charged for similar work, the quality and character of the legal representation, the nature of this case, its lack of complexity, its lack of any unusual risk of loss, the legal skill required to handle this case, the class-based risk of loss, the level of the success, and the significant cause behind the level of success here being the delay at the agency level. After weighing all the same in exercise of its discretion in

serving as an independent check on reasonableness, the court determines a reasonable contingent fee award in this case would be $16,600, and not the requested $31,553.

IT IS THEREFORE ORDERED that the motion by the plaintiff's attorney for an award of attorney fees under 42 U.S.C. § 406(b) (ECF# 18) is granted in part and denied in part. The plaintiff's attorney is entitled to receive $16,600 under § 406(b). The Commissioner shall pay these fees from the amount withheld from plaintiff's past due benefits.

IT IS FURTHER ORDERED that the plaintiff's attorney shall refund to the plaintiff $4,195, which she received as fees under the EAJA after the plaintiff's attorney receives her $16,600.

Dated this __21st__ day of September, 2021, Topeka, Kansas.


__/s Sam A. Crow_____
Sam A. Crow, U.S. District Senior Judge